NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANDREA BELLE LASHWAY, *Appellant.*

No. 1 CA-CR 19-0284
FILED 2-11-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201500709
The Honorable Billy K. Sipe Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Law Offices of Harriette P. Levitt, Tucson
By Harriette P. Levitt
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Kenton D. Jones and Judge D. Steven Williams joined.

---

**B R O W N**, Judge:

¶1　　　　Andrea Belle Lashway appeals from her convictions and sentences for five counts of sale of dangerous drugs, three counts of possession of dangerous drugs, and one count of possession of drug paraphernalia.  For the following reasons, we affirm.

## BACKGROUND

¶2　　　　After his arrest, B.C., an informant, agreed to work with the Mohave Area General Narcotics Enforcement Team ("MAGNET") in exchange for a probation deal relating to his own criminal charges.  B.C. called Detective Wilson when he identified a buyer—Lashway. Wilson and B.C. arranged "buys" to facilitate opportunities for B.C. to purchase methamphetamine ("meth") from Lashway.

¶3　　　　Before the first buy, and with the assistance of other officers, Wilson met with B.C., searched him, searched his vehicle, provided him with surveillance equipment, and then sent him to complete the buy. During the buy, the officers were able to observe B.C. the entire time. Another person ended up selling meth to B.C. on behalf of Lashway.  B.C. gave the meth he had purchased to the officers.  The officers searched B.C. and his car after the buy.

¶4　　　　The second buy followed the same protocol—B.C. contacted Wilson, B.C. and his car were searched, and surveillance equipment was set up prior to the buy.  This time, Lashway met B.C. in a parking lot.  She got into his car, sold him meth, and left.  B.C. and his car were searched, and he gave the meth he purchased to the officers.  The third buy was initiated in the same manner as the first two.  This time, B.C. went to a residence to buy meth from Lashway.  At the fourth buy, B.C. met Lashway at the same location as the previous buy.  At the fifth buy, B.C. and Lashway met in a parking lot.

¶5　　　　Lashway was arrested after police obtained a search warrant and found pills later identified as diazepam and clonazepam in her purse,

as well as a baggie containing meth in her pants.  A grand jury indicted Lashway for sale of a dangerous drug (counts 1-5), possession of dangerous drugs (counts 6, 8, and 9), and possession of drug paraphernalia (count 7).

¶6         On the morning of the third day of trial, the State filed a motion under Arizona Rule of Evidence ("Rule" 609) seeking to preclude Lashway from impeaching B.C. with any prior convictions older than ten years.  The State also asserted that Lashway had failed to provide advance notice of her intent to impeach B.C. with the convictions that were older than ten years.  Although the court expressed its frustration that the State had not raised the issue in a timely manner, after an exchange with counsel the court granted the State's motion in part, finding the convictions from 1997, 2003, and 2005 were precluded, but that Lashway could impeach B.C. with (1) the 1999 conviction because it involved an act of dishonesty, and (2) the 2009 conviction because it fell within the ten-year limit of Rule 609.  The jury found Lashway guilty on all counts, and she timely appealed.

## DISCUSSION

¶7         Lashway contends that the probative value of B.C.'s prior convictions from more than ten years ago substantially outweighs its prejudicial effects and that the evidence should have been admitted.  "We review preclusion of evidence for a clear abuse of discretion."  *State v. Duarte*, 246 Ariz. 338, 344–45, ¶ 20 (2018).

¶8         Under Rule 609, evidence of a conviction is generally inadmissible "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."  Ariz. R. Evid. 609(b).  Prior felony convictions over ten years old are admissible only if the probative value substantially outweighs the prejudicial effect, the admission is supported by specific facts and circumstances, and the adverse party has reasonable written notice of the proponent's intent to admit the prior convictions.  *Id.; State v. Todd*, 244 Ariz. 374, 378, ¶ 6 (App. 2018).  These additional requirements are "consistent with the notion that a criminal conviction's probative value regarding a witness' credibility declines as it becomes more remote in time."  Shirley J. McAuliffe, *Arizona Practice Law of Evidence* § 609:2, at 359 (4th ed. 2008).

¶9         We find no abuse of discretion here.  As noted, at the time of trial B.C. had five prior convictions.  The superior court allowed impeachment on the 1999 conviction because it involved a dishonest act, *see Duarte*, 246 Ariz. at 345, ¶ 25, and the 2009 conviction because it occurred within the past ten years, *see* Ariz. R. Evid. 609(b).  The 1997, 2003, and 2005

convictions, all for possession of a controlled substance, fell outside of the ten-year limit of Rule 609, according to the record before us. Despite not being questioned about three of the prior convictions, during cross-examination B.C. stated he had been arrested six times and acknowledged he had a felony record. B.C. discussed at length his experience using drugs. The State elicited testimony from B.C. that he had used meth on and off for 19 years. The State also asked B.C. specifically about the 1999 and 2009 felony convictions, but Lashway did not. Lashway contends that preclusion of the impeachment evidence relating to the 1997, 2003, and 2005 convictions "went to the essence of the case." However, Lashway did not provide specific facts and circumstances supporting their admission. *See Todd*, 244 Ariz. at 378, ¶ 6. And on appeal, she does not even argue, much less demonstrate, how the probative value of admitting those prior convictions would outweigh its prejudicial effect.

¶10        Lashway argues the superior court erred in granting the State's motion to preclude the impeachment evidence because the motion was submitted after defense counsel had already informed the jury about the five prior convictions. She contends the preclusion made it impossible for her to prove a fact her counsel asserted during opening statements. But Lashway fails to acknowledge that three of the prior convictions were presumptively inadmissible as impeachment evidence pursuant to Rule 609, and nothing in the record shows she sought a ruling from the court prior to opening statements. *See State v. Green*, 200 Ariz. 496, 499, ¶ 11 (2001) (explaining that convictions older than ten years should be admitted into evidence "very rarely and only in exceptional circumstances").[1] Lashway also asserts the court's ruling prevented her from asserting B.C. was setting her up to get himself out of trouble. However, B.C. acknowledged he was arrested and became an informant after that arrest. Information about B.C.'s prior drug use did come into evidence, as did his agreement with MAGNET to work as an informant in exchange for probation after being arrested. We therefore reject Lashway's contention that her constitutional right to due process was violated because she did not have the opportunity to fully confront and cross-examine B.C.

---

[1]        Lashway seems to suggest the superior court abused its discretion in granting the motion because it was untimely. But she has made no showing, either at trial or on appeal, that she suffered prejudice based upon her inability to question B.C. about the prior convictions that were older than ten years or how such questioning would have made a difference in the outcome of the case.

¶11        Lashway also argues the superior court did not make any specific determination on the State's Rule 609 motion to preclude the evidence and applied the wrong standards for admissibility.  However, the record shows the court considered counsel's arguments regarding the State's motion and appropriately explained the standard it was applying under Rule 609 when the ruling was announced.  Thus, the court acted within its discretion in determining that three of B.C.'s prior convictions did not have probative value substantially outweighed by any prejudicial effects.  *See* Ariz. R. Evid. 609(b)(1).[2]

**CONCLUSION**

¶12        Based on the foregoing, we affirm Lashway's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[2]        Given our conclusion, we need not address Lashway's contention that she provided advance notice to the State of her intent to impeach B.C. with the remote convictions based upon her filing of a Rule 15.1 notice requesting that the State disclose the prior convictions of its witnesses.